UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                        CASE NO.  19-00315-01/20-CR-W

     v.

D-8 CORY T. BROWN,

     Defendant.

_____/

| | |
|---|---|
| ASHLEIGH A. RAGNER | ELLEN K. MICHAELS & ASSOC., PLLC |
| MARY KATE BUTTERFIELD | ELLEN K. MICHAELS |
| Assistant United States Attorney | Attorney for Defendant |
| Charles Evans Whittaker Courthouse | 240 Daines St. |
| 400 East Ninth St., Suite 5510 | Birmingham, MI  48009 |
| Kansas City, MO  64106 | (248) 202-3345 |
| (816) 426-3122 | EMichaelsatty@gmail.com |

_____/

## MOTION TO SUPPRESS AND/OR MOTION FOR FED. R. CRIM. P. 41(g) RETURN OF PROPERTY AND INFORMATION, OR, ALTERNATIVELY, FOR AN EVIDENTIARY HEARING

     NOW COMES the DEFENDANT, CORY BROWN, by counsel, ELLEN

MICHAELS, and respectfully requests this Honorable Court to GRANT this

Motion to Suppress Evidence and/or Motion for Fed.R.Crim.P. 41(g) Return of

Property and Information, or, alternatively, for an evidentiary hearing, for the

reasons stated and authority cited herein:

1. Mr. Brown was indicted on October 13, 2020 with count one, alleging conspiracy to distribute controlled substances, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Mr. Brown has filed a Motion for Bill of Particulars.

2. More than two years prior to this indictment date, on August 15, 2018, Kansas City Missouri gang squad officers observed Mr. Brown hanging out in the neighborhood, where he was observed entering his vehicle and pulling away from the curb. One officer followed him.

3. Shortly thereafter, Kansas City Missouri (KC MO) police officers attempted a traffic stop on Mr. Brown for a driving infraction, however, he eluded officers and was not stopped. On August 28, 2018, Kansas City Missouri Police Task Force Officer Robert Evans applied for and received an arrest warrant for Mr. Brown for fleeing arrest.

4. On September 4, 2018, Kansas City Police officers observed Mr. Brown "standing" on the sidewalk in the neighborhood during routine patrol. He was not arrested.

5. On September 12, 2018, TFO Robert Evans, requested assistance from KCMO P.D. on an arrest. He had Mr. Brown under surveillance and gave the officers his location. Officers conducted surveillance on Mr. Brown and waited until he entered his vehicle to move in and make the arrest. Mr. Brown was detained by police without incident.

6. Mr. Brown had one (1) iPhone in his pocket when searched incident to arrest. This phone was placed in Mr. Brown's property.

7. Officers conducted a warrantless search of the vehicle, seizing three (3) additional iPhones. These three (3) phones were placed in Mr. Brown's property.

8. On September 13, 2018, Mr. Brown's attorney requested the return of the iPhones.

9. On October 9, 2018, 26-days after Mr. Brown's request for return of his property, TFO Evans swore to a search warrant for the four (4) seized iPhones, in an affidavit based primarily on "officer experience" and insinuation based on motive. TFO Evans submitted that there was probable cause to believe Mr. Brown was trafficking narcotics and to believe he would be in possession of a firearm. (¶ 6, Search Warrant Affidavit, Offenses Under Investigation). TFO Evans's bald assertions and conclusions are both improper and insufficient for a finding of probable cause.

10. Alternatively, seizure of the phones from the vehicle, after Mr. Brown was secured outside the vehicle, was not a proper seizure incident to arrest because there was no indication at the time of Mr. Brown's arrest that the phones offered evidence of the arrest charge, eluding.

11. Alternatively, the phones and information must be returned to Mr. Brown pursuant to Rule 41(g) because he made a proper request for the return of

his property. The government will not be able to make a showing of due diligence during that 26-day delay between the request for the return of the phones and the officer's swear to a search warrant as reasonable. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

WHEREFORE, this Honorable Court is respectfully moved to GRANT Defendant's Motion to Suppress and Motion for Return of Property pursuant to Rule 41(g), or, in the alternative, grant an evidentiary hearing on the issue of whether the Agent can establish that he exercised diligence when executing the search warrant for the phones.

Respectfully submitted,

/s/Ellen K. Michaels
ELLEN K. MICHAELS
ATTORNEY FOR DEFENDANT

DATED:  May 27, 2022

UNITED STATES OF AMERICA,

    Plaintiff,

                        CASE NO.  19-00315-01/20-CR-W

    v.

D-8 CORY T. BROWN,

    Defendant.

_____/

### BRIEF IN SUPPORT OF MOTION TO SUPPRESS AND/OR MOTION FOR RETURN OF PROPERTY, PURSUANT TO RULE 41(g), OR, ALTERNATIVELY, FOR AN EVIDENTIARY HEARING

### INTRODUCTION

The Fourth Amendment prohibits search warrants unless they have been issued "upon probable cause, supported by oath or affirmation." U.S. Const. Amend. IV. In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicates a fair probability that evidence of a crime will be located within the item which is the focus of the proposed search.

The magistrate who issues the warrant is required to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime

will be found in a particular place." *Illinois v. Gates*, <u>462 U.S. 213, 238</u> (1983). The duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, <u>362 U.S. 257, 271</u> (1960)).

Under the Fourth Amendment, Federal courts and officers are under such limitations and restraints in the exercise of their power and authority as to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. The protection of the Fourth Amendment reaches all alike, whether accused of crime or not; and the duty of giving it force and effect is obligatory on all entrusted with the enforcement of Federal laws. The tendency of those executing Federal criminal laws to obtain convictions be means of unlawful seizures is not to be sanctioned by the courts which are charged with the support of constitutional rights.

"The Fourth Amendment took its origin in the determination of the framers of the Amendments to the Federal Constitution to provide for that instrument a Bill of Rights, securing to the American people, among other things, those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the Government by which there had been invasions of the home and privacy of the citizens and the seizure of their private papers in support of charges, real or imaginary,

made against them." *Weeks v United States*, 232 U.S. 383 (1914). In this case, the warrantless seizure of the iPhones "in support of charges, real or imaginary," was not cured by the subsequently issued search warrant lacking a sufficient showing of probable cause.

On or about September 12, 2018, Mr. Brown was arrested on a state warrant alleging one count of resisting arrest by fleeing and eluding on August 15, 2018, an incident occurring nearly a month prior to the arrest. At the time of his arrest, officers were conducting surveillance on Mr. Brown, waiting for him to enter his parked vehicle before executing the arrest warrant. Once Mr. Brown entered his vehicle, he was approached immediately and asked from the vehicle without incident. During a search of Mr. Brown, officers seized an iPhone from his pocket. During the warrantless search of the vehicle, officers seized three iPhones. These four phones were placed into Mr. Brown's property at the Kansas City Police Department, along with his other personal property. As the phones offered no evidentiary value to the eluding charge for which he was being held—a charge that allegedly occurred a month prior to his arrest—the phones should have been returned.

Undersigned has learned that the government intends to introduce information[1] derived from a forensic examination of the four phones as evidence against Mr. Brown

---

[1] Call logs of incoming, outgoing, missed, saved or stored calls; saved directories of names, physical addresses and telephone/pager/fax numbers; email addresses as well as emails, drafted, stored, sent and/or received; received, sent, stored and/or deleted messages in textual or voice; Text, SMS, MMS and EMS messages received, sent,

at trial.  Because Mr. Brown's Counsel indisputably requested the return of Mr.

Brown's property on September 13, 2018, the date after their seizure, and while they

were in Mr. Brown's property the government was duty bound to return the phones

and any information developed during their forensic evaluation to Mr. Brown, as the

seizure violated Mr. Brown's constitutional rights to be free from unreasonable

searches and seizures, self-incrimination, to a fair trial and to the due process of law.

US Const. Amends IV, V, VI and XIV.  Further, these phones were not seized lawfully

incident to arrest, therefore, the phones and any information derived from the forensic

examination of the phones must be suppressed.  U.S Const. Amends. 4, 14. Finally, 26-

days after the requested return of the phones, the officer swore to a defective search

warrant, lacking probable cause for a search, therefore, the phones and any information

derived from the phones must be suppressed.  U.S. Const. Amends. 4, 14.

This brief presents several pressing constitutional questions.  First, has the

government forfeited it's right to claim certain personal property is evidence, after a

defendant has sought release of his property, when the government's claim is based on

a hunch? The answer is that when an agent waits 26 days, as here, before seeking a

---

stored, drafted and/or deleted; audio, photographs and move data that were device created or not, but received,
stored, viewed, transmitted or deleted; memos in a textual or voice format, be they stored, deleted, sent, received
and/or drafted; stored data/information to include, but not limited to, the device's owner and/or user, Internet
activity; stored calendar data; and stored, received, device-created, transmitted, and/or deleted GPS data.

search warrant, the agent must offer an "excuse" for the lack of due diligence and the delay must be reasonable in a balancing test with a defendant's rights.

Next, may officers seize phones from a vehicle merely "incident to arrest" without a search warrant and after a defendant is secured and arrested away from the vehicle?  The answer is that an officer must believe evidence of the crime of arrest may be in the vehicle.  In this instance, there was absolutely no indication that the phones offered evidence on the crime of arrest.

Finally, once the illegally seized phones are in a defendant's property, will a lawful search warrant seeking forensic examination of the phones remove the taint of the unlawful seizure?  The answer is that the phones are fruit of the poisonous tree because they never should have been seized, and, they should have been returned when requested, therefore, the phones and any derived information must be suppressed. Further, the search warrant lacks probable cause to believe Mr. Brown is involved in narcotics distribution or weapons possession, therefore, the phones should be suppressed.  A hunch, costumed as insinuation and bald assertion, is an insufficient basis for a probable cause finding.  The magistrate must not rubber stamp presented warrants, but, rather, scrutinize them for probable cause.

The discovery described by the AUSA in this case would include possible recordings, call logs of incoming and outgoing calls and their duration, text messages,

email messages, pen registers, cell site information, GPS information, and more. This information, derived from the phones on Mr. Brown's property list, is protected by the Fourth and Fourteenth Amendments, guaranteeing him freedom from unreasonable seizures and searches. US Const Amends 4, 14. In *Carpenter v United States*, 585 U.S. --, 138 S.Ct. 2206, 201 L.Ed. 2d 507 (2018), the Supreme Court held a search warrant supported by probable cause is mandatory when seeking these sensitive records: "the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection" makes it deserving of Fourth Amendment protection; and, *United States v Jones*, 565 U.S. 400, 428, 132 S.Ct. 945, 181 L.Ed. 2d 911 (2012) (Alito, J. concurring), where the Supreme Court held that GPS tracking of a cell phone required a search warrant supported by probable cause.). In *Riley v California*, 573 U.S. 373, 134 S.Ct. 2473, 2477, 189 L.Ed. 430 (2014), a landmark United States Supreme Court case, the Court unanimously held that the warrantless search and seizure of digital contents of a cell phone during an arrest is unconstitutional.

The Fourth Amendment guarantees and grants Mr. Brown protected privacy rights and, in this case, that means this Honorable Court must Order the return of property and information derived from that property to Mr. Brown, suppress the fruits of the tainted search, and dismiss the Indictment.

# ARGUMENT

*1. The phones and derived information must be suppressed as the phones were unlawfully seized "incident to arrest."*

The warrantless seizure and subsequent search are reasonable only if they fall within a specific exception to the Fourth Amendment's warrant requirement. *Kentucky v King*, 563 U.S. 452, __, 131 S.Ct.1849, 179 L.Ed.2d 865 (2011). One exception to the warrant requirement is when property is seized "incident to arrest." This issue was first explored by the Supreme Court in *Chimel v California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), where the Court required that the search incident to arrest be limited to the area within the arrestee's immediate control, where it is justified by interests in officer safety and preventing destruction of evidence. In *Arizona v Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 172 L.Ed.2d 485 (2009), the Court allowed the "search incident to arrest" of a vehicle *where the arrestee was unsecured* <u>and</u> where the arrestee was within reaching distance of the passenger compartment. The *Gant* Court agreed officers may warrantlessly search a vehicle where it is reasonable to believe that *evidence of the crime of arrest might be found* in the vehicle.

In this case, Mr. Brown was asked from the vehicle, complied without incident and was arrested. After Mr. Brown was secured, officers conducted a warrantless unconstitutional search of the vehicle interior and seized three phones. Not one report received during discovery to-date connected the phones seized on September 12, 2018

to Mr. Brown's arrest for eluding officers on August 15, 2018. In fact, there are several property reports verifying these phones were in Mr. Brown's property for several weeks, post-arrest on the eluding count. (KCPD_00669: *KCMO P.D. Physical Evidence/Property Inventory Report*, dated September 13, 2018, listing (3) iPhones recovered from vehicle and held as property on Eluding offense; KCPD_00671: *KCMO P.D. Physical Evidence/Property Inventory Report*, dated September 13, 2018, listing iPhone recovered from Mr. Brown and held as property on Eluding offense; KCPD_00801: *KCMO P.D. Physical Evidence/Property Inventory Report*, dated September 25, 2018, listing "CD containing phone records" held as property on Felony Eluding offense.)

Because Mr. Brown was secured and arrested outside of the vehicle, there was no issue of officer safety or evidence destruction. Finally, there was no reason for officers to seize the phones pursuant to a warrantless search. If the claim is that the phones were seized pursuant to a warrantless inventory search conducted in coordination with an impound, Mr. Brown is interested in reviewing the Kansas City Missouri impound policy, in order to check compliance by officers. There was sufficient time to impound the vehicle, then, to seek a search warrant for the vehicle, if officers believed evidence pertinent to a felony investigation was present. However, because Mr. Brown was arrested on an eluding offense, the phones offered no evidentiary value on the arrest charge, and the unlawfully seized phones were placed in

his property, to be returned.

The four (4) iPhones should be suppressed or, alternatively, should have been returned to Mr. Brown upon request on September 13, 2018.

2. *The government's unreasonable delay in seeking a search warrant forfeits their interests in the phones Mr. Brown requested be returned.*

After Mr. Brown's request for the return of the phones on September 13, 2018 went ignored, nearly four (4) weeks later, a Kansas City, Missouri TFO investigating Mr. Brown on an unrelated narcotics charge received a warrant for the search of the phones and transported the four (4) phones to the Regional Computer Forensics Laboratory (RCFL) for forensic examination. On October 22, 2018, the phones were transported back to the Kansas City, Missouri Police Department. At that time, Mr. Brown's Property Inventory Report changed from the offense of Eluding to a "Narcotics" offense. (KCPD_00766: Kansas City, Missouri Police Department Physical Evidence/Property Inventory Report, dated 10/22/1018, indicated at the top of the document in handwriting, "Transfer.")

Even if this Honorable Court determined that the phones were lawfully seized incident to arrest, the length of time between the seizure of the cell phones and obtaining a search warrant was unreasonably long and infringed upon Mr. Brown's possessory interests, thus violating his Fourth Amendment rights. U.S. Const. Amend. 4. A search warrant must be obtained to view the contents of a phone. *Riley v California*, 134 S.Ct. 2473, 2483, 189 L.Ed.2d 430 (2014).

Even a seizure that is ". . . lawful at its inception can nevertheless violate the fourth amendment because its manner of execution unreasonably infringes upon possessory interests. *United States v Jacobsen*, 466 U.S. 109, 124, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), *citing United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

In *Place*, the Court utilized a balancing test between the government's interest in the seizure against the individual's possessory interest in the object seized to determine if an extended seizure violated the fourth amendment. The Supreme Court determined that the three-day time period between the detention of the baggage and the securing of the search warrant was too long. In assessing the length of the detention, the Court looked to the officers' diligence in the pursuit of their investigation.

In this case, one cannot say that the officer's nearly four (4) week delay is an example of diligence. The task force officer had served an application for a trap and trace, pen register, cell site information, call log detailed report, text messages, GPS and more, on a phone number allegedly linked to Mr. Brown prior to the seizure of that phone. Upon seizure of these four (4) iPhones on September 12, 2018, a diligent task force officer would have secured a warrant for the seizure and search of these phones immediately—especially since he was present at the time of Mr. Brown's arrest—in fact, instrumental in execution of that arrest.

Balancing Mr. Brown's possessory interest in the property at stake, the

Supreme Court has recognized that "today many of the more than 90% of American adults who own cell phones keep on their person a digital record of nearly every aspect of their lives." *Riley, supra*, at 2479. This creates a heavily-weighted possessory interest in the phones.

Another aspect of the analysis is whether or not Mr. Brown consented to the search. In this case, Mr. Brown did not personally nor by third-party access consent to the search of the phones. He took no action to diminish his possessory interest in the property.

This case is similar to *U.S. v Pratt*, 915 F.3d 266 (4th Cir. 2019), where the Court held that the 31-day delay between the date of the seizure incident to arrest and the time it took to get a search warrant was an unreasonably long delay in violation of defendant's fourth amendment rights—despite the fact that the cell phone was lawfully seized incident to arrest. The *Pratt* Court noted the strong privacy interest in a cell phone, as *Riley* described. The Court held that a cell phone may not be held indefinitely because it has independent evidentiary value. The Court pointed out … "[t]he Agents could have removed or copied incriminating files and returned the phone." *Id*. at 273. The excuse that the Agents offered and the Court rejected was that they couldn't decide which jurisdiction to apply for the warrant. In *United States v Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009), the excuse that the Agents offered and the Court rejected was that the Agent was out of town in training and did not think getting the warrant was urgent.

There, the 21-day delay was held to be unreasonable.

Like the *Mitchell* and *Pratt* cases, Mr. Brown did not consent to the seizure of the phones by police. Mr. Brown had a significant possessory interest in the phones and immediately requested their return. The phones have not been returned to Mr. Brown as of this date. The 26-day delay between Mr. Brown's arrest and the search warrant for the phones is unreasonable in this case, violating Mr. Brown's fourth amendment guarantees. For this reason, the phones must be returned to Mr. Brown, together with all information derived from the phone examination, and, the United States Attorney's Office must be directed to redact this information from the file.

Rule 41(g) provides an immediate remedy for this violation. The rule provides a mechanism for a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to move for the property's return. Under this Rule, "[p]roperty" includes not only "tangible objects" such as "documents," but also "information." The forensic examinations at issue here are "property." The Rule's distinction between those who are aggrieved by an illegal "search and seizure" and those aggrieved by the "deprivation of property" is meant to extend the Rule's protection to not only those harmed by an initial unlawful seizure, but also to those harmed by the retention of property whose seizure may have been legal.

... Rule 41(e) provides that an aggrieved person may seek return of property

that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.

Pursuant to Rule 41(g), the defense asks that all information related to the examination of the phones and the physical phones themselves, be returned to counsel, and through counsel, to the defendant. If granted, an evidentiary would provide the factual basis for the Court to grant this request because there is no reasonable excuse available to the Agent in this case for waiting 26-days before seeking a search warrant for the phones.

3. *The October 9, 2019 search warrant affidavit lacked a sufficient showing of probable cause.*

The warrant averments were designed to provoke bias by insinuating that Mr. Brown was involved in a series of murders avenging his brother's killing, despite there being no evidentiary showing to back up these bald averments. These averments bare no relevance on the issue of whether there is probable cause to believe Mr. Brown was distributing marijuana or whether he would be in possession of a firearm on the date the warrant was sought. Further, there are uncorroborated averments, one, attaching Mr. Brown to a street gang—a so-called street gang the Indictment fails to establish as existent, two, uncorroborated averments relying heavily on officer experience, and, finally, broad stroke conclusion submitted under the guise of probable cause. Specifically:

a.    TFO Evans identifies an alleged "criminal street gang" known as "246", has been involved in criminal acts including, "homicide, assault, robbery, and illegal drug distribution . . .." (¶ 7);

b.    Four (4) individuals are believed to be associated with this "gang", Mr. Brown being one member, in a supporting role. (¶ 8-13);

c.    On August 16, 2013, Mr. Brown's twin brother, Cody Brown, was murdered, and, one of the informants' advised investigators that Brian Leach bragged about it. (¶ 23);

d.    An informant reported information that Cory Brown and/or David Duncan, Jr. were responsible for the murder of Brian Leach's associate, Calvert Antwine. (¶ 25);

e.    On May 16, 2018, an informant reported that a second associate of Brian Leach's, Darrell Allen, was killed by David Duncan Jr. (¶ 34-35);

f.    On May 22, 2018, a confidential source reported that Mr. Brown and "JJ" were involved in Darrell Allen's homicide.  (¶ 37);

g.    On June 5, 2018, a new confidential source reported that Mr. Brown was responsible for Darrell Allen's homicide. (¶ 38).  TFO Evans writes, "The information provided by CS-5 was consistent with the facts developed during the homicide investigation."

Given the conflicting reports from the confidential sources and the total lack of the requisite corroboration by law enforcement, these averments are insufficient to establish probable cause. TFO Evans says repeatedly throughout this affidavit that "developments in the homicide investigation" corroborate information received from the sources, however, TFO Evans never indicates the nature of these so-called developments. There is simply no independent evidence set forth in this affidavit supporting a finding of probable cause—of narcotic trafficking or that Mr. Brown participated in any of these shootings. (¶ 38);

   h.     Justin Powell attended a pool party Mr. Brown attended on June 11, 2018 (¶ 40); Justin Powell was shot to death on June 23, 2018 (¶ 41); A review of Powell's phone revealed that Powell had sent videos to Mr. Brown and Mr. Brown sent videos to Powell.

   These so-called videos offered no evidentiary value to the criminal investigation, however, TFO Evans states, "Based on training and experience, I know that criminals sometimes record their acts of violence and send these recordings to co-conspirators or associates in order to brag."

   Although the videos indisputably were of no evidentiary value, TFO Evans suggests the videos were sent "in order to memorialize [brag about] this shooting that they both were a part of" (¶ 43).  TFO does not even minimally state that, in fact, there is an open shooting investigation this video allegedly documented—

because there was no such crime committed. TFO is making insinuations about crimes being committed for which there is no evidence, intending to bias the reviewing magistrate;

i. Next, a review of Powell's phone revealed messages about getting a new car. TFO Evans again overreaches, "It *appeared* the user of the iPhone wanted to help the user of 816-572-0635, but first needed to obtain a car that 'they' would not recognize. *Based on training and experience*, I know that criminals will often disguise their cars, or use cars that are attributed to other people in order to conceal their criminal activity and thwart law enforcement."

There is no investigatory corroboration of this averment. TFO Evans does not present evidence of a history between Powell and Mr. Brown, where Powell did favors for my Mr. Brown, such as renting him a car, nor was evidence presented that Powell and Mr. Brown were involved in criminal conduct together. TFO Evans did not conduct surveillance to corroborate his hunches about Powell's relationship with Mr. Brown. Rather, he uses the overused "based on training and experience" which belies the fact that there is no evidence supporting his averment.

j. On August 1, 2018, investigators met with a confidential source reporting information passed along from an "unwitting associate" of the source. On July 31, 2018, *Mr. Brown allegedly sold marijuana to a friend* of this "unwitting associate." The person Mr. Brown allegedly sold this marijuana to told the unwitting associate

that Mr. Brown was involved in seven (7) recent murders and was now looking for D'Angelo LKU, a competing marijuana dealer, to kill him.

TFO Evans provided absolutely no corroboration regarding KCMO PD's open and unsolved murder investigations on the seven (7) murders attributed to Mr. Brown *or* corroboration that a single open murder investigation had evidence linking Mr. Brown to the crime(s). (¶ 47). TFO Evans states conclusions as facts without offering the requisite underlying support. TFO Evans's purpose for interjecting this extremely prejudicial information was not to establish probable cause Mr. Brown is selling marijuana, but to incense the magistrate's bias due to risk of leaving a killer on the streets. These averments lack any indicia of credibility, reliability, or independent investigation.

This search warrant lacks the requisite probable cause to believe Mr. Brown is involved in trafficking a controlled substance(s) or is a possessor of firearms. (¶6). The single alleged direct sale between Mr. Brown and a confidential source (¶47) is too vague and lacks the requisite credibility to support a probable cause finding that search of the phones will reveal evidence of narcotic trafficking.

A second leap made in the affidavit is the insinuation that Mr. Brown is a "known associate" of Carleeon D. Lockett, someone arrested on August 29, 2018 for possessing marijuana, a scale and a stolen Glock. This connection is made merely because his phone number was included as a contact in her phone (¶ 55).

There are no facts listed to corroborate how Mr. Brown and Ms. Lockett are "known associates", such as seeing them together. The insinuation that Mr. Brown is connected to contraband in Ms. Lockett's possession is wholly unsupported.

The affidavit then focuses on information derived from the application for requested text, data, call detail records, cell site location, and GPS/Precision locations for phone number 816-703-7750, attributed to Mr. Brown. (¶¶ 60-64), and, his subsequent arrest, (¶¶ 64-66). The affidavit makes these general averments regarding officer "training and experience":

a.     Mr. Brown reported no wages for the past 18 months. "Based on training and experience, Investigators know that drug traffickers maintain large quantities of cash and generally do not have reported income." There was absolutely no evidence of "large quantities of cash" attached to Mr. Brown. His employment status is not evidence of drug dealing.

b.     One of the phones seized from the vehicle had a cracked screen. "Investigators know narcotic traffickers will commonly keep phones (broken as well) after the service is turned off to have access to old contacts." (¶ 67). There is no information verifying that this phone had its service turned off or contained specific contacts, therefore, this information that a phone has a cracked screen does not support a probable cause finding.

c.      "Investigators know drug traffickers commonly carry multiple phones to communicate with family/friends, customers, and source of supplies for their narcotics."  (¶ 68, 73 (duplicate)).  Then, these paragraph runs down all of the information investigators claim the drug trafficking organization will maintain on mobile devices.  Mr. Brown's possession of broken and intact cell phones does not make him a drug trafficker.

The warrant lacks any indicia of probable cause to believe Mr. Brown is distributing narcotics.  There is an insufficient basis upon which a practical, common-sense decision, based on competent evidence, can be made that the iPhones contained evidence of narcotics trafficking.  There has been no showing by a substantial basis that evidence of a crime will be on the iPhones.

Officers see Mr. Brown in the neighborhood and each time he is acting lawfully.  Mr. Brown may be in the phone contacts of local people arrested on criminal charges, but Mr. Brown is not guilty by association—there must be a showing made with sufficient credibility and reliability that he is trafficking narcotics.  The search warrant for the iPhones lacked probable cause and this Honorable Court must grant this motion to suppress the phones and any information derived from them.

**CONCLUSION**

WHEREFORE, this Honorable Court is respectfully moved to GRANT

Defendant's Motion to Suppress because the government cannot establish the phones were lawfully seized incident to arrest, thus, the phones are fruit of the poisoness tree and were searched based on a subsequent warrant alleging an insufficient probable cause showing, and/or GRANT Defendant's Motion for Return of Property pursuant to Rule 41g, or, in the alternative, grant an evidentiary hearing on the issue of whether the Agent can establish that he exercised diligence when executing the search warrant for the phones.

Respectfully submitted,

/s/Ellen K. Michaels_____
ELLEN K. MICHAELS
ATTORNEY FOR DEFENDANT

DATED:  May 27, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                 CASE NO.  19-00315-01/20-CR-W

      v.

D-8 CORY T. BROWN,

      Defendant.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2022, I electronically filed the foregoing Motion for Fed. R. Crim. P 41(g) Return of Property and Information with the Clerk of the Court using the ECF system, which gives notification to all attorneys of record.

                                 /s/Ellen K. Michaels_____
                                 ELLEN K. MICHAELS
                                 ATTORNEY FOR DEFENDANT

DATED:  May 27, 2022

## <u>EXHIBITS</u>

KCPD_00669: *KCMO P.D. Physical Evidence/Property Inventory*

*Report*, dated September 13, 2018, listing (3) iPhones recovered from vehicle and held as property on Eluding offense;

KCPD_00671: *KCMO P.D. Physical Evidence/Property Inventory Report*, dated September 13, 2018, listing one (1) iPhone recovered from Mr. Brown and held as property on Eluding offense;

KCPD_00801: *KCMO P.D. Physical Evidence/Property Inventory Report*, dated September 25, 2018, listing "CD containing phone records" held as property on Felony Eluding offense.

KCPD_00766: Kansas City, Missouri Police Department Physical Evidence/Property Inventory Report, dated 10/22/1018, indicated at the top of the document in handwriting, "Transfer."

LABORATORY USE ONLY
Lab Page #
Exam.
Date

PROPERTY ROOM USE ONLY
Location
Rec'd By
Date Rec'd
Disposition

BIN
BAR CODE

CONTROL
BAR CODE

Approved by _____ Date 09-13-18 _____ Page 1 of 1

## KANSAS CITY, MISSOURI POLICE DEPARTMENT Supp. CRN 18-062598

### PHYSICAL EVIDENCE/PROPERTY INVENTORY REPORT

Type of Offense: ☐ Homicide ☐ Rape ☐ Robbery ☐ Assault ☐ Burglary ☐ Stealing ☐ Auto Theft ☐ Narcotics ☐ Forgery ☒ Other Eluding

To Be Used As Evidence? ☒ Yes ☐ No / May Property Room Release Or Dispose of Property According To Approved Procedures? ☐ Yes ☒ No

U.S. Currency / Coin To Be Held In Original Form - **Do Not Deposit** - ☐ To Be Deposited ☐ Authorized by _____

**STOLEN PROPERTY** ☐ YES ☒ NO | Unit Handling Follow-up Investigation DEU 1820

State of Missouri

Victim (1) Last _____ First _____ MI ___ R/S ___ DOB ___ Victim (2) Last _____ First _____ MI ___ R/S ___ DOB

Suspect (1) _____ R/S ___ DOB ___ Suspect (2) _____ R/S ___ DOB ___ Suspect (3) _____ R/S ___ DOB

Location of Recovery 9335 Blue Ridge _____ JACO

Address _____ County

Vehicle Recovered
From _____ Jeep _____ Black ___ D5026-AG ___ MO ___ 1J8HR58215C590168

Year ___ Make ___ Color ___ License Number ___ State ___ Year ___ V.I.N. Number

Recovered
From _____ ☐ Victim ☐ Suspect ☐ Finder ☒ Other Tow-in

Last _____ First _____ MI ___ Race ___ Sex DOB

Owner of
Property

Address _____ ( )
Phone Number

Last _____ First _____ MI ___ Address _____ ( )
Phone Number

Person
Arrested

Last _____ First _____ MI ___ ☐ Booking Slip # / ☐ GOS # / ☐ UTT # (Check One)

☐ Firearms and Toolmarks ☐ Chemistry ☐ Trace Evidence ☐ Fingerprints ☐ Documents ☒ Other Cell phones

| ITEM NO. | BAG NO. | NO. OF ARTICLES | NARCOTICS FIELD TEST + / + | DESCRIPTION | SERIAL NUMBER | ESTIMATED VALUE |
|---|---|---|---|---|---|---|
| 1 | 1 | 1 | | I-PhoneS with red case located in the cup holder | | $0.00 |
| 2 | 1 | 1 | | I-PhoneS with black case located in the cup holder | | $0.00 |
| 3 | 1 | 1 | | I-Phone with cracked screen located on the passenger | | |
| | | | | seat | | $0.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total | |

Reporting Officer Evans _____ Serial Number 4550 ___ Beat Reporting / Unit DEU/1827

Form 236 P.D. (Rev. 01-2017)

KCPD 00669

# EVIDENCE CHAIN OF CUSTODY AND RELEASE OR CHECKOUT INFORMATION

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Form 236 P.D. (Rev. 01-2017)

RCFD 00670

| LABORATORY USE ONLY | | |
|---|---|---|
| Lab Page # | | |
| Exam. | | |
| Date | | |

| | BIN<br>BAR CODE | CONTROL<br>BAR CODE |
|---|---|---|
| **PROPERTY ROOM USE ONLY** | | |
| Location | | |
| Rec'd By | | |
| Date Rec'd | | |
| Disposition | | |

Approved by _____ Date 09-13-18 _____ Page 1 of 1

## KANSAS CITY, MISSOURI POLICE DEPARTMENT   Supp. CRN 18-062598

### PHYSICAL EVIDENCE/PROPERTY INVENTORY REPORT

Type of Offense: ☐ Homicide ☐ Rape ☐ Robbery ☐ Assault ☐ Burglary ☐ Stealing ☐ Auto Theft ☐ Narcotics ☐ Forgery ☒ Other Eluding

To Be Used As Evidence? ☒ Yes ☐ No / May Property Room Release Or Dispose of Property According To Approved Procedures? ☐ Yes ☒ No

U.S. Currency / Coin To Be Held in Original Form - **Do Not Deposit** - ☐ To Be Deposited ☐ Authorized by _____

**STOLEN PROPERTY ☐ YES ☒ NO**   Unit Handling Follow-up Investigation DEU 1820

State of Missouri

| Victim (1) Last | First | MI | R/S | DOB | Victim (2) Last | First | MI | R/S | DOB |
|---|---|---|---|---|---|---|---|---|---|

| Suspect (1) | | R/S | DOB | Suspect (2) | | R/S | DOB | Suspect (3) | | R/S | DOB |
|---|---|---|---|---|---|---|---|---|---|---|---|

Location of Recovery 9335 Blue Ridge                    JACO

Address                    County

Vehicle Recovered
From _____ Jeep        Black      D5026-AG   MO           1J8HR58215C590168

          Year  Make     Color    License Number  State Year  V.I.N. Number

Recovered
From

|  | Last | First | MI | Race | Sex | DOB | ☐ Victim ☐ Suspect ☐ Finder ☒ Other Tow-in |
|---|---|---|---|---|---|---|---|

Owner of Property

| Address | | | | Phone Number ( ) |
|---|---|---|---|---|

Person Arrested

| Last | First | MI | Address | Phone Number ( ) |
|---|---|---|---|---|

| Last | First | MI | ☐ Booking Slip # / ☐ GOS # / ☐ UTT # (Check One) |
|---|---|---|---|

☐ Firearms and Toolmarks ☐ Chemistry ☐ Trace Evidence ☐ Fingerprints ☐ Documents ☒ Other Cell phones

| ITEM NO. | BAG NO. | NO. OF ARTICLES | NARCOTICS FIELD TEST +/+ | DESCRIPTION | SERIAL NUMBER | ESTIMATED VALUE |
|---|---|---|---|---|---|---|
| 4 | 1 | 1 | | I-PhoneS with pink case located Brown's left pocket | | |
| | | | | by P.O. Smith | | $0.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total | |

Reporting Officer Evans            Serial Number 4550   Beat Reporting / Unit DEU/1827

Form 236 P.D. (Rev. 01-2017)

# EVIDENCE CHAIN OF CUSTODY AND RELEASE OR CHECKOUT INFORMATION

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Item # _____ Number of Articles Released _____ Number Remaining _____ Date Released _____

Release To (Signature) _____ Print Name _____

Address _____ City, State, Zip _____ Phone _____

Received From _____ Agency/Unit _____

Released To _____ Agency/Unit _____

Purpose _____

Date Returned _____ Release Authority _____ Released By _____

Form 236 P.D. (Rev. 01-2017)

RGF B_00672

| LABORATORY USE ONLY | | |
|---|---|---|
| Lab Page # | | |
| Exam. | | |
| Date | BIN BAR CODE | CONTROL BAR CODE |
| PROPERTY ROOM USE ONLY | | |
| Location | | |
| Rec'd By | | |
| Date Rec'd | | |
| Disposition | | |

Approved by _NL_ # 4755    Date 09-25-2018    Page 1 of 1

## KANSAS CITY, MISSOURI POLICE DEPARTMENT   Supp. CRN 18-062598
## PHYSICAL EVIDENCE/PROPERTY INVENTORY REPORT

Type of Offense: ☐ Homicide ☐ Rape ☐ Robbery ☐ Assault ☐ Burglary ☐ Stealing ☐ Auto Theft ☐ Narcotics ☐ Forgery ☒ Other Felony Eluding

To Be Used As Evidence? ☒ Yes ☐ No / May Property Room Release Or Dispose of Property According To Approved Procedures? ☐ Yes ☒ No

U.S. Currency / Coin To Be Held In Original Form - Do Not Deposit - ☐ To Be Deposited ☐ Authorized by _____

STOLEN PROPERTY ☐ YES ☒ NO   Unit Handling Follow-up Investigation DEU-Det. Evans

State of Missouri

Victim (1) Last   First   MI   R/S   DOB   Victim (2) Last   First   MI   R/S   DOB

Cory Brown    B/M 07-24-89

Suspect (1)   R/S   DOB   Suspect (2)   R/S   DOB   Suspect (3)   R/S   DOB

Location of Recovery 1125 Locust KCMO 64106    Jackson County

Vehicle Recovered From: Address

Recovered From: Year   Make   Color   License Number   State   Year   V.I.N. Number

KCPD    ☐ Victim ☐ Suspect ☐ Finder ☒ Other Owner

Last   First   MI   Race   Sex   DOB

1125 Locust KCMO 64106    (816) 234-5000

Address    Phone Number

Owner of Property: KCPD    1125 Locust KCMO 64106    (816) 234-5000

Last   First   MI   Address    Phone Number

Person Arrested: Last   First   MI    ☐ Booking Slip # / ☐ GOS # / ☐ UTT # (Check One)

☐ Firearms and Toolmarks ☐ Chemistry ☐ Trace Evidence ☐ Fingerprints ☐ Documents ☒ Other Evidence

| ITEM NO. | BAG NO. | NO. OF ARTICLES | NARCOTICS FIELD TEST +/- | DESCRIPTION | SERIAL NUMBER | ESTIMATED VALUE |
|---|---|---|---|---|---|---|
| 1 | 1 | 1 | N/A | CD containing phone records | N/A | $0.00 |
| | | | | | | |
| | | | | TAG # 18001/893 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total | $0.00 |

Reporting Officer Matthew Williams    Serial Number 4299    Beat Reporting / Unit 1881/KCCCTF

Form 236 P.D. (Rev. 01-2017)

Transfer

| LABORATORY USE ONLY | | |
|---|---|---|
| Lab Page # | | |
| Exam. | | |
| Date | | |
| PROPERTY ROOM USE ONLY | BIN BAR CODE | CONTROL BAR CODE |
| Location | | |
| Rec'd By | | |
| Date Rec'd | | |
| Disposition | | |

Approved by _____ Date 10-22-2018    Page 1 of 1

## KANSAS CITY, MISSOURI POLICE DEPARTMENT   Supp. CRN 18-035286

## PHYSICAL EVIDENCE/PROPERTY INVENTORY REPORT

Type of Offense: ☐ Homicide ☐ Rape ☐ Robbery ☐ Assault ☐ Burglary ☐ Stealing ☐ Auto Theft ☒ Narcotics ☐ Forgery ☐ Other _____

To Be Used As Evidence? ☒ Yes ☐ No / May Property Room Release Or Dispose of Property According To Approved Procedures? ☐ Yes ☒ No

U.S. Currency / Coin To Be Held in Original Form - **Do Not Deposit** - ☐ To Be Deposited ☐ Authorized by _____

STOLEN PROPERTY ☐ YES ☒ NO   Unit Handling Follow-up Investigation DEU 1820

US GOV

| Victim (1) Last | First | MI | R/S | DOB | Victim (2) Last | First | MI | R/S | DOB |
|---|---|---|---|---|---|---|---|---|---|

| Suspect (1) | R/S | DOB | Suspect (2) | R/S | DOB | Suspect (3) | R/S | DOB |
|---|---|---|---|---|---|---|---|---|

Location of Recovery ____ Address _____ County ____

Vehicle Recovered From

Recovered From: Year ____ Make ____ Color ____ License Number ____ State ____ Year ____ V.I.N. Number ____

Last ____ First ____ MI ____ Race ____ Sex ____ DOB ____ ☐ Victim ☐ Suspect ☐ Finder ☐ Other ____

Owner of Property: Address _____ ( ) Phone Number

Last ____ First ____ MI ____ Address ____ ( ) Phone Number

Person Arrested: Last ____ First ____ MI ____ Address ____

Last ____ First ____ MI ____ ☐ Booking Slip # / ☐ GOS # / ☐ UTT # (Check One)

☐ Firearms and Toolmarks ☐ Chemistry ☐ Trace Evidence ☐ Fingerprints ☐ Documents ☐ Other _____

| ITEM NO. | BAG NO. | NO. OF ARTICLES | NARCOTICS FIELD TEST +/- | DESCRIPTION | SERIAL NUMBER | ESTIMATED VALUE |
|---|---|---|---|---|---|---|
| 1 | 1 | 1 | | RCFL report | | $0.00 |
| 2 | 1 | 1 | | RCFL transfer sheet | | $0.00 |
| 3 | 1 | 1 | | master copy of Brown phones | | $0.00 |
| 4 | 1 | 1 | | PD 107 | | $0.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Total | $0.00 |

Reporting Officer Evans    Serial Number 4550    Beat Reporting / Unit DEU/1827

Form 236 P.D. (Rev. 01-2017)