IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 19-00315-08-CR-W-DGK |
| | ) |
| CORY T. BROWN, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION TO
DENY DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress and/or Motion for Federal Rule of Criminal Procedure 41(g) Return of Property and Information. Defendant moves the Court to suppress all evidence obtained from four cell phones seized on September 12, 2018, one from Defendant's pocket and three from his vehicle. For the following reasons, Defendant's motion should be denied.

**I. INTRODUCTION**

On October 1, 2019, an Indictment was returned charging Defendant with one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (B), (C), (D) & 846. (Doc. 1) On October 13, 2020, a Superseding Indictment was returned that added charges against co-defendants; Defendant Brown's charge remained unchanged. (Doc. 234)

On May 27, 2022, Defendant Brown filed a motion to suppress. (Doc. 593) The Government responded on June 10, 2022. (Doc. 620) On June 23, 2022, the Court granted retroactive leave for Defendant to file the instant motion out of time. (Doc. 663) Defendant filed

1

a reply on June 24, 2022. (Doc. 669) On July 1, 2022, an evidentiary hearing was held on the limited issue of establishing a timeline pursuant to which the search warrant was sought. The Government appeared by Assistant United States Attorneys Mary Kate Butterfield, Ashleigh Ragner, and Ben Hurst. Defendant was present, represented by retained counsel Ellen Michaels, Lisa Dwyer, and Marilyn Keller. The Government called The Honorable Adam L. Caine,[1] former Assistant United States Attorney, and Kansas City, Missouri Police Department Detective/FBI Task Force Officer Robert Evans to testify. The following exhibits were admitted into evidence:

| | |
|---|---|
| Government's Exhibit 1: | Search Warrant 18-SW-00366-JTM(SWH); |
| Government's Exhibit 2: | Calendar (September and October 2018); |
| Government's Exhibit 3: | Email communication exchanged between United States Attorney's Office, TFO Evans, and SA Douglas McKelway regarding warrant; |
| Government's Exhibit 4: | Email submitting warrant to Judge Hays; and |
| Government's Exhibit 5: | TFO Evans' email regarding warrant timeline (KCPD_04844 - KCPD_04845). |

## II. FINDINGS OF FACT

On the basis of the evidence presented at the suppression hearing, the undersigned submits the following proposed findings of fact:

1. In June of 2018, the United States Attorney's Office for the Western District of Missouri was investigating the 246 organization. (Tr. at 10) Defendant was a target of such investigation. (Tr. at 10-11) Assistant United States Attorney Adam Caine was the first chair on the investigation; FBI Special Agent Douglas McKelway and Kansas City Missouri Police Department Detective Robert Evans acted as case agents. (Tr. at 10, 11, 58) AUSA Caine worked directly with Detective Evans on the issue of cell phones. (Tr. at 11)

2. AUSA Caine was part of the Violent Crime and Drug Trafficking Unit. (Tr. at 22-23) There were approximately 12-14 attorneys, including supervisors, in this unit in June of 2018.

---

[1] Jackson County, Missouri Circuit Court Judge Adam L. Caine was an Assistant United States Attorney for the Western District of Missouri at the time relevant to this Report and Recommendation. (Tr. at 10) As a result, he will be referred to as "AUSA Caine" herein.

(Tr. at 23) AUSA Ashleigh Ragner worked with AUSA Caine on the instant case. (Tr. at 23, 24) ASUA Caine had a secretary and a paralegal available to him. (Tr. at 23-24)

3. Detective Evans is a detective with the Kansas City, Missouri Police Department's Drug Enforcement Unit and cross-designated as a task force officer with the FBI. (Tr. at 57) At the time of the search warrant affidavit, he had been with the Kansas City, Police Department for twenty-one years. (Gvt. Exh. 1, ¶ 1) He had been assigned to the Kansas City, Missouri Police Department's Drug Unit for thirteen years and the FBI's Metro Gang Squad for approximately one year. (Gvt. Exh. 1, ¶ 1) During his tenure, Detective Evans had been involved in numerous investigations of individuals for importing and distributing controlled substances and possessing and trafficking illegal firearms. (Gvt. Exh. 1, ¶ 1) He has communicated extensively with other state and law enforcement personnel, who specialized in narcotics and firearm investigations. (Gvt. Exh. 1, ¶ 1)

4. AUSA Caine participated in drafting the search warrant affidavit and application for Defendant's Apple account that was submitted and signed on August 29, 2018. (Tr. at 26)

5. AUSA Caine also participated in the preparation and September 5, 2018, submission of a pen trap and trace application for Defendant's phone. (Tr. at 29)

6. On Wednesday, September 12, 2018, Defendant was arrested on a fleeing and eluding warrant; four cell phones were seized in conjunction with his arrest. (Tr. at 11) Shortly thereafter, AUSA Caine spoke with Detective Evans about obtaining a federal search warrant for the four cell phones. (Tr. at 11, 30, 60) They then worked collaboratively on an affidavit to support such search warrant. (Tr. at 60, 66)

7. The following timeline sets forth both Detective Evans and AUSA Caine's activities between the seizure of Defendant's phones and the date on which a search warrant was obtained.

8. On Thursday, September 13, 2018, Detective Evans worked on surveillance logs from Defendant's arrest. (Gvt. Exh. 5)

9. Defendant's attorney asked state prosecutors to return Defendant's phones on Thursday, September 13, 2018. (Tr. at 76)

10. On Friday, September 14, 2018, at 4:09 p.m., Detective Evans emailed AUSA Caine the first draft of the affidavit to support a search warrant application for Defendant's phones.

3

(Tr. at 14, 30; Gvt. Exh. 3 at KCPD_04846; Gvt. Exh. 5) AUSA Ragner was included on the email for purposes of staying informed; she was not involved with drafting at this point. (Tr. at 30-31) AUSA Caine quickly reviewed the draft affidavit and requested additional information from Detective Evans that afternoon; AUSA Ragner was again included. (Tr. at 14-15, 31; Gvt. Exh. 3 at KCPD_04847) Detective Evans provided the requested information to AUSA Caine at 4:38 p.m. the same day. (Tr. at 14-15, 32; Gvt. Exh. 3 at KCPD_04848)

   11. On Monday, September 17, 2018, Special Agent McKelway provided AUSA Caine additional information regarding Carleeon Lockett, a known associate of Defendant and 246 member, as it related to probable cause for the affidavit supporting the search warrant for Defendant's phones. (Tr. at 15; Gvt. Exh. 1 at ¶ 55; Gvt. Exh. 3 at KCPD_04850)

   12. Detective Evans conducted surveillance and was involved in a car chase of two individuals on Monday, September 17, 2018. (Gvt. Exh. 5) Detective Evans recovered firearms and cocaine from the vehicle; one of the individuals was charged. (Gvt. Exh. 5)

   13. Detective Evans attended mandatory range qualifications on Tuesday, September 18, 2018. (Gvt. Exh. 5) He also attended a plea hearing and worked on reports from the previous day's activities. (Gvt. Exh. 5)

   14. On Wednesday September 19, 2018, Detective Evans attended mandatory FBI training and assisted the Kansas City, Missouri Police Department's Gang Squad with surveillance. (Gvt. Exh. 5)

   15. Mitchell Byrd was arrested on Thursday September 20, 2018, following recovery of a handgun, crack cocaine, and three cell phones during execution of a search warrant. (Tr. at 40, 46; Gvt. Exh. 1 ¶ 69) Detective Evans drafted warrants for Mr. Byrd's cell phones and such warrant was obtained on October 1, 2018. (Tr. at 71; Gvt. Exhs. 1, 5)

   16. On Friday, September 21, 2018, Detective Evans worked on paperwork and associated tasks from the arrests of Defendant Brown and another. (Gvt. Exh. 5)

   17. On Monday, September 24, 2018, Detective Evans drafted and submitted three cell phone search warrants for phones located during the September 17, 2018 arrest. (Gvt. Exh. 5) He signed the warrants in state court on Tuesday, September 25, 2018. (Gvt. Exh. 5)

   18. On Tuesday, September 25, 2018, AUSA Caine requested more specific information about each of Defendant's phones. (Tr. at 15; Gvt. Exh. 4 at KCPD_04852) Detective

4

Evans provided the information later that afternoon to AUSA Caine and Special Agent McKelway. (Tr. at 15, 34, 37; Gvt. Exh. 3 at KCPD_04854)

19. On Wednesday, September 26, 2018, Detective Evans assisted the Kansas City, Missouri Police Department Drug Enforcement Unit with a drug purchase and attended Mr. Byrd's detention hearing. (Gvt. Exh. 5)

20. On Thursday, September 27, 2018, Detective Evans transported cell phones from the September 17, 2018 arrest for downloading. He also located and downloaded City camera footage from the same arrest. (Gvt. Exh. 5)

21. On Thursday, September 27, 2018, AUSA Caine analyzed information obtained from a search warrant related to Mr. Byrd. (Tr. at 40) AUSA Caine testified that, in the Government's opinion at that time, there was a significant link between Mr. Byrd, Defendant, and other individuals involved in this case. (Tr. at 40)

22. On Friday, September 28, 2018, Detective Evans completed and returned the cell phone warrants from the September 17, 2018 arrest. (Gvt. Exh. 5)

23. Between September 17, 2018 and September 28, 2018, AUSA Caine's daily calendar did not contain annotations regarding working on the search warrant for Defendant's phones; however, AUSA Caine testified he did not record written work on his calendar. (Tr. at 36, 37, 38-39, 45) He further testified that a significant amount of work related to Mr. Byrd, Defendant, and the search warrant at issue occurred during the last ten days of September and in early October. (Tr. at 40)

24. AUSA Caine testified that he spoke to Special Agent McKelway and Detective Evans multiple times a day most days during this time period, either by telephone or in person. (Tr. at 40-41)

25. Between the time Detective Evans sent the draft affidavit on September 14, 2018 and the October 5, 2018 final draft, AUSA Caine performed "quite a bit" of work, both substantive and stylistic, on the affidavit. (Tr. at 16-17) AUSA Caine testified that additional work needed to be completed on the initial draft affidavit because the investigation was still in the early stages. (Tr. at 17) AUSA Caine explained that the Government had a lot of source information and circumstantial evidence that needed to be linked together so that it was legally and logically relevant. (Tr. at 17) Additionally, related events continued to develop -- such as obtaining and

5

analyzing Carleeon Lockett's phones and the arrest of Mitchell Byrd -- that were included in the affidavit supporting the search warrant for Defendant's phones. (Tr. at 17)

26. On Monday, October 1, 2018, Detective Evans signed cell phone search warrants for Mr. Byrd's phones. (Gvt. Exh. 5)

27. On Tuesday, October 2, 2018, Detective Evans assisted the Kansas City, Missouri Police Department Gang Squad with surveillance and responded to an overdose death. (Gvt. Exh. 5)

28. On Wednesday, October 3, 2018, Detective Evans assisted the Kansas City, Missouri Police Department Drug Enforcement Unit with a drug purchase. (Gvt. Exh. 5)

29. On Thursday, October 4, 2018, Detective Evans drafted reports regarding Defendant's arrest. (Gvt. Exh. 5)

30. On Friday, October 5, 2018, AUSA Caine emailed an edited draft of the affidavit to Special Agent McKelway and Detective Evans for review and submission to the Court. (Tr. at 15-16, 42-43; Gvt. Exh. 3 at KCPD_04860-04861) The email read:

> Attached is the affidavit for Brown's phones that I've added (I hope) all the information that we've been able to gather since the initial draft. Please review for accuracy. I apologize (especially to Ashleigh) that I wasn't able to get the warrant app, warrant and attachments drafted, I just ran out of time. Hopefully we can get them signed today. Brown's state defense attorney is demanding them from Jackson County, and it's starting to escalate a bit. I'm on a flight from 6:57 to about 10:30 but can be available after that if needed.

(Gvt. Exh. 3 at KCPD_04861) AUSA Caine testified that his reference to running out of time pertained to the fact that he was out of time before he boarded an airplane to leave town. (Tr. at 43)

31. Detective Evans reviewed the revised affidavit, confirmed that the information was true and accurate, and responded to the group that the affidavit looked good. (Tr. at 61, 67; Gvt. Exh. 3 at KCPD_04860; Gvt. Exh. 5)

32. Because AUSA Caine was out of town, AUSA Ashleigh Ragner submitted the search warrant application and affidavit to the United States Magistrate Judge Sarah W. Hays on Friday, October 5, 2018. (Tr. at 16; Gvt. Exhs. 2, 4)

33. Monday, October 8, 2018, was Columbus Day, a federal holiday. (Gvt. Exh. 2)

34. On Tuesday, October 9, 2018, Detective Evans swore to the accuracy of the affidavit. (Tr. at 62; Gvt. Exhs. 2, 5) Judge Hays then signed the warrant. (Tr. at 62; Gvt. Exh. 1)

35. AUSA Caine described his workload between September 14, 2018 and October 5, 2018, as "pretty crushing," and stated that he generally worked very early in the morning, during the day, and again at night. (Tr. at 18, 44) His heavy workload was attributed to significant developments in this case, including the arrest and charging of Mr. Byrd, analysis of Mr. Lockett's cell phones, and investigation/meetings with three to four different agencies (involving 30-40 investigators from different homicide and violent crime units) of several violent acts from the 246 organization. (Tr. at 18-19) In addition to this case, AUSA Caine was also involved in a case ultimately certified to seek the death penalty; three sentencing hearings, one of which involved a national issue of first impression, another that involved a career offender designation as affected by the defendant's pre-sentencing conduct, and a third that involved a complicated Sentencing Memorandum. (Tr. at 20-21) During this time period, AUSA Caine also prepared witnesses, consulted with experts, participated in several proffer sessions, attended two or three detention hearings, and presented at least one case to the grand jury. (Tr. at 21, 52)

36. AUSA Caine testified he did not give the search warrant application and affidavit for Defendant's phone to another prosecutor because the case was still in its infancy and he had the most familiarity. (Tr. at 54-55) At that time, AUSA Ragner was relatively new to the United States Attorney's Office, was still learning about the case, and AUSA Caine did not think it was fair to give her such assignment. (Tr. at 54-55)

## III. DISCUSSION

Defendant challenges the seizure and subsequent search of four cell phones recovered in conjunction with his September 12, 2018 arrest. He argues that: (1) the phones were unlawfully seized; (2) the Government's delay in seeking a search warrant for the phones violated the Fourth Amendment; and (3) the October 9, 2018 search warrant affidavit lacked probable cause. Alternatively, Defendant seeks return of the four cell phones pursuant to Federal Rule of Criminal Procedure 41(g). The Government maintains Defendant's motion should be denied on grounds

7

that (1) the motion was untimely;[2] (2) Defendant does not specifically challenge seizure of the cell phone from Defendant's pocket, and the Government does not intend to introduce evidence of, or seized from, the other three phones; (3) the delay between seizure of the phone from Defendant's person and application for a search warrant was reasonable; (4) probable cause supported issuance of the search warrant; and (5) even if the search warrant lacked probable cause, the good-faith exception prevents suppression.

## A. LEGALITY OF SEIZURES

Defendant's motion initially challenged the legality of the four cell phones seized in connection with his September 12, 2018 arrest. Three phones were seized from the vehicle Defendant was driving; the fourth cell phone was retrieved from his pocket pursuant to a search incident to arrest. Although the motion references the cell phone retrieved from Defendant's pocket, neither Defendant's motion nor his reply seek suppression of the pocket phone based on legality of such seizure.[3] (Docs. 593, 669) The Government stated in its response, and later confirmed during the July 1, 2022 evidentiary hearing, that it does not intend to introduce evidence from the three cell phones recovered from Defendant's vehicle as part of its case-in-chief at trial. (Doc. 620, pp. 1, 6, 7; Tr. at 4) The Government also argued Defendant did not offer any argument contesting the legality of the seizure of the phone from his person. (Doc. 620, pp. 1, 6, 7) Defendant agreed in his reply. (Doc. 669, p. 2) Accordingly, Defendant's challenge to the legality

---

[2] Subsequent to the Government's suggestions in opposition, the Court granted retroactive leave to file the instant motion out of time. (Doc. 663) During the July 1, 2022, status conference the Court reiterated, however, the expectation for strict adherence to pretrial filing deadlines. (Tr. at 89-90)

[3] In contrast, paragraph 10 of Defendant's motion specifically identifies the phones seized from the vehicle, stating "seizure of the phones from the vehicle, after Mr. Brown was secured outside the vehicle, was not a proper seizure incident to arrest because there was no indication at the time of Mr. Brown's arrest that the phones offered evidence of the arrest charge." (Doc. 593, p. 3)

8

of the seizures is denied as moot. *United States v. Martin*, 15 F.4th 878, 883 (8th Cir. 2021); *United States v. Bowers*, No. 19-00143-01-CR-W-BP, 2021 WL 1589247 at *2-*3 (W.D. Mo. Jan. 28, 2021), *aff'd* 2021 WL 6206564 (8th Cir. 2021).

## B. TIMLINESS OF OBTAINING SEARCH WARRANT

The Fourth Amendment prevents unreasonable searches and seizures. When analyzing reasonableness, one factor the court considers is the "duration of the seizure pending . . . issuance of a search warrant." *United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021). In doing so, the court "must balance the privacy-related and law enforcement-related concerns implicated." *Id.* (internal quotations omitted). Such relevant, non-exhaustive factors include:

> On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. On the government-interests side, relevant considerations include the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.

*Id.* at 617. "[R]easonableness is measured in objective terms by examining the totality of the circumstances." *Id.* (quoting *United States v. Farnell*, 701 F.3d 256, 261 (8th Cir. 2012)). There is no "bright line past which a delay becomes unreasonable." *Id.* (quoting *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)).

Application of these considerations to the instant case results in the balance tilting in favor of the Government. Despite such result, several factors do weigh in favor of Defendant. First -- the nature of the seized property, as the Supreme Court has recognized a strong privacy interest in an individual's cell phone. *See Riley v. California*, 573 U.S. 373 (2014). Defendant did not consent to seizure of his phone and the seizure interfered with his possessory interest since he had

9

been released on bond. Finally, the twenty-six-day delay -- as argued by Defendant -- between seizure of the cell phone from his pocket and issuance of the search warrant is a "considerable period" of time. *See id*. (describing fifteen-day delay). *See also United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (holding 31 days were unreasonable where the government offered "no persuasive justification for the delay"); *United States v. Mitchell*, 565 F.3d 1347, 1351-52 (11th Cir. 2009) (holding 21-day delay was unreasonable where there was "no compelling justification for the delay").

Upon closer examination, however, the Court finds the proper period of consideration to be shorter. Specifically, nine of the days Defendant argues to be unreasonable were weekends and a federal holiday.[4] *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (holding delay attributed to weekends and holiday properly considered in evaluating reasonableness of delay in securing warrant). That leaves seventeen days between the date Defendant's phone was seized and the date Judge Hays signed the search warrant. *See, e.g., Mays*, 993 F.3d at 618 (holding 15-day delay to be reasonable); *United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012) (holding 25-day delay to be reasonable); *United States v. Vallimont*, 378 Fed. Appx. 972, 976-77 (11th Cir. 2010) (holding 45-day delay to be reasonable).

With regard to law enforcement-related concerns, the Government had a legitimate interest in holding the property as they had probable cause to believe the cell phone contained evidence of illegal firearm possession and narcotics trafficking, *infra* III(C). The nature and complexity of the

---

[4] Although already discounted due to falling on a weekend and federal holiday, Saturday, October 6, 2018 through Monday, October 8, 2018, the period of time between submission to the Court and the date the search warrant was issued, could be separately excluded in evaluating the reasonableness of delay. *See United States v. Laist*, 702 F.3d 608, 614-15 (11th Cir. 2012).

10

investigation also weighs in the Government's favor. Detective Evans promptly provided AUSA Caine a draft affidavit just two days after Defendant's arrest. (Fact No. 10) But, as the evidence showed, investigation of this case was still in the early stages. (Fact Nos. 25, 36) Additional investigation and work on the affidavit needed to be completed in order to link together source information and circumstantial evidence so that it would be legally and logically relevant. (Fact No. 25) *See Vallimont*, 378 Fed. Appx. at 976 (finding forty-five day delay reasonable given law enforcement's efforts "to prepare the warrant and continue investigating the case"). This work was achieved through a collaborative process between AUSA Caine, Detective Evans and Special Agent McKelway. (Fact No. 6) Such process involved obtaining search warrants and analyzing results from other individuals' cell phones who were thought to be connected to the investigation (i.e., Mr. Byrd and Mr. Lockett), AUSA Caine meeting with three to four different agencies and encompassing 30-40 law enforcement officers from different homicide and violent crime units, and investigating several violent acts thought to involve the 246 group. (Fact Nos. 25, 35) Detective Evans responded promptly to AUSA Caine's requests for additional information. (Fact Nos. 10, 18)

During this same time period, both Detective Evans and AUSA Caine had other significant professional obligations as well.[5] (Fact Nos. 12-17, 19-22, 26-29, 35) *See United States v. Burton*, 756 Fed. Appx. 295, 300 (4th Cir. 2018) (declining suggestion that all other law enforcement obligations must be set aside to obtain a warrant as quickly as possible when due diligence was exercised). To be sure, over the seventeen days at issue, Detective Evans performed surveillance

---

[5] The Court is not persuaded by Defendant's argument that such obligations were not recorded on AUSA Caine's daily calendar, as the evidence shows he did not record written work on his calendar. (Fact No. 23)

11

and recovered evidence following a car chase, worked on reports, gathered video evidence, attended two days of mandatory training, attended a plea hearing, drafted at least six other cell phone warrants, assisted with drug purchases, and responded to an overdose death. (Fact Nos. 12-17, 19-20, 22, 26-29) AUSA Caine was involved with a case ultimately certified to seek the death penalty, was responsible for three complicated sentencing hearings, prepared witnesses, consulted with experts, participated in several proffer sessions, attended two or three detention hearings, and presented at least one case to the grand jury. (Fact No. 35) AUSA Caine testified that he and AUSA Ragner were the only attorneys in his division working on this matter and that he did not believe it would have been fair to give the search warrant application and affidavit for Defendant's phone to AUSA Ragner given the fact that she was new to the office and he had the most familiarity with the investigation. (Fact Nos. 1, 2, 36) Unlike in *Pratt* and *Mitchell*, the delay in obtaining a warrant in this case was justified.

With regard to the quality of the warrant application, the affidavit itself is twenty-seven pages long, well-written and thorough, and included ample information as related to Defendant's conduct. *See Mays*, 993 F.3d at 617-18. The affidavit includes information about activity that occurred subsequent to Defendant's arrest and that had been incorporated as a result of continued investigation. (*See* Gvt. Exh. 1, ¶¶ 69, 70, 71)

The totality of these circumstances demonstrate that AUSA Caine and Detective Evans worked diligently in drafting the search warrant affidavit. The Court, therefore, finds that the time period between law enforcement seizing Defendant's cell phone on September 12, 2018 and the Court issuing a warrant on October 9, 2018 was not constitutionally unreasonable. Suppression is not warranted on this basis.

## C. PROBABLE CAUSE

Issuance of a search warrant must be supported by probable cause, which exists under the totality of the circumstances, when there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Smith*, 21 F.4th 510, 514 (8th Cir. 2021) (quoting *United States v. Gater*, 868 F.3d 657, 660 (8th Cir. 2017)); *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020); *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). A search warrant application must contain "evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)). Relevant factors include "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Id*. Judges may draw reasonable inferences when determining the existence of probable cause. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009). "When an affidavit in support of a search warrant is based upon information from an informant," the informant's reliability "can be established through independent corroboration or [a] track record of providing trustworthy information." *Faulkner*, 826 F.3d at 1144. Reviewing judges can also consider the experience of the affiant when determining probable cause. *See, e.g., Keele*, 589 F.3d at 943-44; *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007). A reviewing court must ensure that the magistrate judge who issued the warrant "had a 'substantial basis for concluding that probable cause existed.'" *Johnson*, 848 F.3d at 876 (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)).

In this case, such a substantial basis existed. Review of the search warrant affidavit reveals information establishing a fair probability that evidence of controlled substance distribution and illegal firearm possession would be found on Defendant's cell phone. The affidavit describes the

13

246 organization, its members, and criminal activities perpetrated by the group. (Gvt. Exh. 1, ¶¶ 7-39) It also links Defendant to the organization. (Gvt. Exh. 1, ¶¶ 9, 13) The affidavit additionally sets forth law enforcement's bases for believing Defendant's cell phone may contain evidence of these crimes.

First, the affidavit provided probable cause to believe Defendant had committed the crime of being a felon in possession of a firearm. Defendant has previous felony convictions. (Gvt. Exh. 1, ¶ 13) The affidavit stated that analysis of Mr. Powell's phone revealed Defendant sent a video to Mr. Powell of people scattering in the street after gunshots were fired. (Gvt. Exh. 1, ¶ 43) Mr. Powell texted the same video to another individual saying, "This n***a twin play all day I got him n mich." (Gvt. Exh. 1, ¶ 43) Investigators knew that Defendant was commonly referred to by his moniker, "Twin." (Gvt. Exh. 1, ¶ 43) Based on Detective Evans' training and experience, he knew that "criminals sometimes record their acts of violence, and send these recordings to co-conspirators or associates to brag." (Gvt. Exh. 1, ¶ 43) The affidavit stated CS-3 and CS-5 reported Defendant being involved in other instances of gun violence including homicide. (Gvt. Exh. 1, ¶¶ 25, 37, 38, 43) CS-3 and CS-5 are both documented confidential sources who have provided verified and reliable information to investigators. (Gvt. Exh. 1, ¶¶ 22, 39) Detective Evans believed, based on the context and proximity of the text conversations, that the user of the phone associated with Defendant's number sent the video to memorialize the shooting of which they were both a part. (Gvt. Exh. 1, ¶ 43)

The affidavit stated that analysis of Mr. Powell's phone further revealed the following conversation with the user of the phone associated with Defendant's number, "Bro I got u but I need u to hold on for I'm trying to get my car paint by if u need I got u but I need to which car bro

14

I got to go hard but I need you I got 5 bro I need one fr I think they know my car". (Gvt. Exh. 1, ¶ 44) The user of the phone associated with Defendant's number replied, "Ok". (Gvt. Exh. 1, ¶ 44) Detective Evans believed, based on his training and experience, that criminals often disguise their cars, or use cars that are attributed to other people in order to conceal their criminal activity and thwart law enforcement. (Gvt. Exh. 1, ¶ 44). The affidavit went on to state, "More specifically, I [Detective Evans] know . . . that it is not uncommon for criminals to drive a car that is not attributed to them prior to conducting a drive-by shooting, or a different violent act, so that they can gain the tactical advantage of surprise over their intended victim." (Gvt. Exh. 1, ¶ 44) Detective Evans is an experienced law enforcement officer. (Fact No. 3; Gvt. Exh. 1, ¶ 1) As such, Judge Hays was permitted to reply on his training and experience in interpreting such conversations.

Second, the affidavit provided probable cause to believe Defendant was committing the crime of distributing controlled substances. Law enforcement recovered a distribution amount of crack cocaine from Mitchell Byrd's residence. (Gvt. Exh. 1, ¶ 69) They also recovered three cell phones from Mr. Byrd. (Gvt. Exh. 1, ¶ 69) The affidavit stated that toll analysis between the phone number that law enforcement believed Mr. Byrd used to sell crack cocaine and Defendant's number revealed 649 contacts between September 2017 and August 16, 2018. (Gvt. Exh. 1, ¶¶ 69, 70) A review of another phone number associated with Defendant revealed 175 contacts with Mr. Byrd between August 2018 and September 2018 alone. (Gvt. Exh. 1, ¶ 71) Although not critical to the probable cause determination, a documented confidential informant who had previously provided verified information informed law enforcement that his/her close associate observed Defendant sell marijuana on July 31, 2018, and that such associate stated Defendant had been

15

involved in seven recent murders and was looking for a competing marijuana dealer in order to kill him, too.  (Gvt. Exh. 1, ¶¶ 47, 48)  The affidavit stated Defendant's $10,000.00 cash-only bond was posted at 4:00 a.m., approximately ten hours after his arrest, despite Defendant not having any reported wages for the previous eighteen months.  (Gvt. Exh. 1, ¶ 66)  The affidavit then detailed Defendant's activities that Detective Evans believed were consistent with drug trafficking, such as turning off service for his phone, changing vehicles, using evasive driving techniques, backing vehicles into parking stalls, and maintaining large quantities of cash despite a lack of reported income.  (Gvt. Exh. 1, ¶¶ 47, 51-53, 58-59, 63, 66)

Detective Evans explained that drug traffickers commonly maintain addresses or telephone numbers in mobile telephones, which include sources of supply, distributors, and customers, as well as to maintain contact with their criminal associates.  (Gvt. Exh. 1, ¶ 68)  Drug traffickers also commonly use mobile phones to take pictures of themselves, their associates, their properties, their illegal products, and the cash proceeds from the illegal transactions.  (Gvt. Exh. 1, ¶ 68)  Detective Evans, therefore, believed there was evidence of narcotics trafficking stored in Defendant's phone.  (Gvt. Exh. 1, ¶ 74)  *See United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021) (recognizing cell phones as "tools of the drug trade").

As established by evidence obtained through the various phone records, information from confidential informants, and Detective Evans' beliefs as informed by his training and experience, the affidavit provided a constitutionally sufficient nexus between Defendant's cell phone and criminal activity.  The Court, therefore, finds that Judge Hays had a substantial basis for concluding that probable cause existed.

16

Case 4:19-cr-00315-DGK    Document 694    Filed 07/20/22    Page 16 of 19

## D. GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE

Even if the search warrant application were found to be deficient, the search was lawful under the good faith exception. *See United States v. Leon*, 468 U.S. 897 (1984). "In *Leon*, the Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause." *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002) (citing *Leon*, 468 U.S. at 922-23). *See also United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007). *Leon* identified "four circumstances in which an officer's reliance on an invalid warrant would not be objectively reasonable: (1) when the issuing magistrate [judge] 'was misled by information in an affidavit that the affiant knew was false or would have known was false' absent 'reckless disregard of the truth'; (2) when the issuing magistrate [judge] 'wholly abandoned [her] judicial role'; (3) when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) when the warrant is 'so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officer cannot reasonably presume it to be valid.'" *United States v. Saddler*, 194 F.4th 1035, 1040 (8th Cir. 2021).

Defendant maintains that the third circumstance prohibits application of the good faith doctrine. The facts of this case demonstrate otherwise. As stated above, III(C), the search warrant for Defendant's phone was supported by probable cause. Detective Evans had collaboratively worked on the affidavit with AUSA Caine until submission and knew that Judge Hays found it to establish probable cause. His belief that the affidavit established probable cause thus was objectively reasonable. Evidence obtained from the search warrant for the phone seized from

17

Defendant's pocket should not be excluded.

### E. RETURN OF PROPERTY

Defendant also moves the Court to order the return of his cell phones. Federal Rule of Criminal Procedure 41(g) provides a mechanism by which individuals "aggrieved by an unlawful search and seizure of property *or* by the deprivation of property may move for the property's return." (emphasis added) The Eighth Circuit has established a burden-shifting approach for analyzing motions made under such Rule. First, "[t]he movant must establish lawful entitlement to the property." *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008). "This burden is often satisfied by showing that the property was seized from the movant's possession, as a person from whom property is seized is presumed to have a right to its return." *Id*. The government must then "establish a legitimate reason to retain the property." *Id*. at 397. "A Rule 41(g) motion 'is properly denied if . . . the government's need for the property as evidence continues.'" *Id*. (quoting *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002)).

During the hearing on the instant motion, the Government stated that the three cell phones obtained from Defendant's vehicle may have some evidentiary value in rebuttal at trial and noted that Defendant could not possess the phones while in custody. (Tr. at 4) It, therefore, asked the Court to defer ruling the request for these three phones until trial was complete. (Tr. at 4-5) The Government further stated it intends to use the cell phone obtained from Defendant's pocket, and evidence extracted therefrom, more broadly and asks that Defendant's request for return of this phone be denied. (Tr. at 5)

The Court agrees that return of the phones is not appropriate at this time. Given the need to retain Defendant's cell phones for evidentiary purposes throughout trial in this matter, the

18

Case 4:19-cr-00315-DGK    Document 694    Filed 07/20/22    Page 18 of 19

Government has met its burden. A ruling on Defendant's request for the return of his four cell phones should be deferred.

## IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress. It is further

RECOMMENDED that the Court defer ruling on Defendant's motion for return of property.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this Report and Recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ *Jill A. Morris*
JILL A. MORRIS
UNITED STATES MAGISTRATE JUDGE